IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GERALD H. WILLIAMS, JR.** and
**CONSTRUCTION & ENGINEERING
MANAGEMENT RESEARCH, INC.**,
an Oregon corporation,

        Plaintiffs,

   v.

**THE LINCOLN NATIONAL
LIFE INSURANCE COMPANY**,
an Indian corporation

        Defendant/Third-Party
        Plaintiff

   v.

**UNIVERSITAS EDUCATION, LLC**,
a Delaware limited liability company, and
**GRIST MILL TRUST WELFARE
BENEFIT PLAN**, a Connecticut trust.

        Third-Party Defendants

Case No. 3:15-CV-00196-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiffs Gerald Williams, Jr. and Construction & Engineering Management Research, Inc. ("CEMR") (collectively, "the Williams plaintiffs") originally brought this diversity action

1–OPINION AND ORDER

seeking a court order directing Lincoln National Life Insurance Company ("Lincoln") to change the ownership name on a policy it issued and to pay the surrender value of the policy. Lincoln filed a third-party complaint interpleading the listed owner on the policy, Grist Mill Trust Welfare Benefit Plan, ("Grist Mill") and Universitas Education LLC ("Universitas"), a company that obtained a restraining notice in a matter pending in United States District Court for the Southern District of New York. Universitas's restraining order purports to prohibit Lincoln from permitting the transfer of any property in which Grist Mill has an interest. Universitas filed with this Court a Motion to Dismiss the third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Universitas seeks the transfer of the matter to the Southern District of New York. For the reasons stated below, the Motion is DENIED with respect to dismissal and GRANTED with respect to transfer.

## BACKGROUND

Mr. Williams is the sole shareholder in CEMR. Pl.'s Compl. at ¶ 2. In 2004 CEMR adopted Grist Mill's Section 419 Welfare Benefit Plan. *Id.* at ¶ 6–7. CEMR made annual contributions to Grist Mill on behalf of Mr. Williams. *Id.* at ¶ 9. Grist Mill used the contributions to purchase life insurance from Jefferson Pilot, listing Mr. Williams as the insured. *Id.* at ¶ 10. Grist Mill held the policy in trust for the benefit of Mr. Williams. *Id.* Mr. Williams's wife, Caroline Reay, was to be the beneficiary of the trust in the event of Mr. Williams's death. *Id.* Jefferson Pilot then merged with Lincoln, assuming Lincoln's name. *Id.* at ¶ 11.

In 2014, Mr. Williams signed forms instructing Lincoln to transfer ownership from Grist Mill to himself and to change the policy's beneficiary from Mr. Williams to

Dr. Reay. *Id.* at ¶ 14. Grist Mill sent the forms to Lincoln. *Id.* at ¶ 15. Lincoln did not change the ownership of the policy, as requested. *Id.* at ¶ 16. Lincoln answers that it had been provided with a restraining notice that purported to bar it from "permitting any sale, assignment or transfer of any property in which the Grist Mill Trust has an interest." Def.'s Answer at ¶ 16.

The Williams plaintiffs filed a motion in United States District Court for the Southern District of New York requesting a protective order preventing Universitas from restraining the transfer of life insurance policies written by Lincoln. Judge Laura Taylor Swain dismissed the motion without prejudice, holding that she could not exercise ancillary jurisdiction to resolve the issues raised in the motion. Def.'s Answer [9], Ex. 2 at 6. Mr. Williams then filed this action against Lincoln. Lincoln alleged that "Plaintiff's dispute appears to be with Universitas and Grist Mill Trust as to whether the ownership of the policies can be transferred." Def.'s Answer at ¶ 16. Lincoln then filed its Third Party Complaint interpleading Universitas and Grist Mill, invoking Federal Rule of Civil Procedure 22. Third Party Compl. [10] at ¶ 22–28.

## DISCUSSION

Universitas's motion presents two questions: (1) Does this Court have jurisdiction to interplead Universitas, a company with no contacts with Oregon; and (2) if this Court has jurisdiction, should the matter be transferred to the Southern District of New York? Before reaching those questions, I address the Williams plaintiffs' argument that Universitas failed to comply with Local Rule 7-1.

## I.     **Local Rule 7-1**

The Williams plaintiffs argue that Universitas failed to confer with Plaintiffs' counsel, Michael Bloom, before filing its motion for transfer of venue. Pl.'s Resp. [33]. at 23. Universitas replies that it conferred with Lincoln's counsel because "as the caption of this case readily

3–OPINION AND ORDER

reflects, it was Lincoln Life—and not the Plaintiffs—who brought Universitas into this action as a third-party defendant." Third-party Def.'s Reply [35] at 1–2.

Interpleader is a two-stage action. In the first stage, the Court determines whether interpleader is appropriate. In the second stage, the Court determines the merits of competing claims. *See* Moore, et al., Moore's Federal Practice § 22.03[1][a]. In the first stage, Universitas's opposing party is Lincoln, but in the second stage, it is the Williams plaintiffs. Universitas's motion for dismissal implicates the first stage of interpleader, but its motion in the alternative for transfer of venue implicates the second stage. Universitas should have conferred with the relevant opposing parties for each motion.

Yet Universitas has explained its failure to do so by reference to its belief that it was proper to confer with Lincoln's counsel. Local Rule 7-1 requires the parties to make "a good faith effort through personal or telephone conferences to resolve the dispute." Universitas has argued that it acted in good faith in conferring with Lincoln.

Moreover, the purpose of Local Rule 7-1 is to preserve judicial resources by promoting the amicable resolution of disputes. As this Court has previously explained, "[i]t is clear from the attorneys' conversations that if [the] motion were denied on procedural grounds, [the movant] immediately would seek leave to refile the motion. Preservation of judicial resources is served by considering the motion now, on its merits." *Exact Order Specialties v. Glow Indus., Inc.*, 2012 WL 3597432, at *3 (D. Or. Aug. 20, 2012).

## II.  **Jurisdiction**

Universitas argues that it lacks minimum contacts with Oregon and is subject to neither specific nor general jurisdiction in the state. Third-party Def.'s Mot. to Dismiss [19] at 6–11. A defendant must be subject to personal jurisdiction in the state to be

interpleaded under Rule 22. *See Cal. Pipe Recycling, Inc. v. Sw. Holdings, Inc.*, 2008 WL 4690534, at *8 (E.D. Cal. Oct. 23, 2008). Neither Lincoln nor the Williams plaintiffs contend that Universitas is subject to personal jurisdiction in Oregon. So neither Lincoln nor the Williams plaintiffs contend that interpleader was properly pleaded under Rule 22.

The Williams plaintiffs argue, instead, that Lincoln's complaint asserted all the elements for statutory interpleader pursuant to 28 U.S.C. § 1335. Service of process for interpleader pursuant to this statute may be served nationwide. 28 U.S.C. § 2361. If Lincoln's complaint may be construed to interplead Universitas under 28 U.S.C. § 1335, then Universitas's objection that this Court lacks jurisdiction over it is unavailing. In reply, Universitas makes two counter-arguments: (1) Lincoln's complaint must be construed as making a claim of rule interpleader (pursuant to Federal Rule of Civil Procedure 22) rather than statutory interpleader (pursuant to 28 U.S.C. § 1335); and (2) even if Lincoln's complaint may be construed to have invoked a statutory basis for interpleader, Lincoln has failed to meet the statute's requirement that it make a deposit with the Court of the funds at issue. I address each of these arguments in turn.

    **A.**    *Lincoln's Complaint May Be Construed to Assert Rule Interpleader.*

Universitas argues that because Lincoln identified its claim as rule interpleader in its complaint, Universitas cannot be interpleaded using the nationwide service of process available in statutory interpleader. Third-party Def.'s Reply [35] at 4.

Federal Rule of Civil Procedure 8(e) states, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). This rule reflects a departure from the technical pleading requirements that pre-dated the Federal Rules of Civil Procedure. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . ."). Other courts have construed pleadings liberally to

find a claim for rule interpleader when the complaint stated an intent to plead statutory interpleader. *See Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994) ("We also agree with the Court's *sua sponte* decision to convert the action to rule interpleader."); *Geler v. Nat'l Westminster Bank USA*, 763 F.Supp. 722, 727 (S.D.N.Y. 1991) ("[P]leadings are not to be read narrowly and technically, but are to be construed so as to do substantial justice.") (internal quotation marks omitted). In order to facilitate resolution of this case on the merits, I construe Lincoln's claim as an interpleader action under 28 U.S.C. § 1335.

### B.     *A Deposit with the Court Is Necessary.*

A statutory interpleader action requires (1) claims to a stake valued at $500 or more; (2) by two or more claimants of diverse citizenship; and (3) a deposit by the plaintiff of the stake claimed or a bond to ensure the plaintiff's compliance with the court's future order. 28 U.S.C. § 1335. Universitas argues that Lincoln failed to avail itself of statutory interpleader because it did not make a deposit with the court.

The Williams plaintiffs reply that life insurance policies are only paper representations of value and that depositing the policy claimed here would be "meaningless." Pl.'s Reply [33] at 21. The Williams plaintiffs also argue that "surrendering the policy for its value may have detrimental effects that are not in the claimants' best interests." *Id.* The Williams plaintiffs cite *Kitzer v. Phalen Park State Bank of St. Paul*, 379 F.2d 650 (8th Cir. 1967), for the proposition that courts should accommodate situations in which depositing the stake claimed is impractical. The Williams plaintiffs then cite *Austin v. Texas-Ohio Gas Company*, 218 F.2d 739 (5th Cir. 1955) as an example of a case where the court allowed an interpleader action to go forward when the third-party plaintiff could not produce shares of a stock claimed by multiple defendants.

The Williams plaintiffs' arguments are unavailing. The paper the life insurance policy is printed on has no value independent of the commitment of Lincoln to meet the obligations the policy represents. But these representations have value. Indeed, the Williams plaintiffs' original complaint invoked this Court's jurisdiction under 28 U.S.C. § 1332 with the allegation that "this case is between citizens of different states and the amount in controversy exceeds $75,000 . . ." Compl. at ¶ 4. The Williams plaintiffs' complaint requested that the court "[d]irect[] Lincoln Financial Group to allow plaintiff to surrender the policy in exchange for its cash value and pay the same to plaintiff." Compl. at ¶ 20.2. The Williams plaintiffs' claim with respect to the policies is for something of value, as indeed it must be in order to confer jurisdiction on this Court to hear either a diversity action or an interpleader action. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1335 ("The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more . . . .").

A third-party plaintiff must deposit with the court an amount to cover the future judgment of the court or provide a bond to ensure its compliance with that judgment. In *New York Life Ins. Co. v. Lee*, 232 F.2d 811 (9th Cir. 1956), the Ninth Circuit upheld a court's dismissal of an interpleader claim lacking an adequate deposit. *New York Life Ins. Co.* involved facts similar to those in the present case. The disputed stake was a life insurance policy still in effect when the insured sought payment of the insurance policy's surrender value. *Id.* at 812. The insurance company contended that it could not accept the policy's surrender without the consent of the insured's ex-wife. *Id.* The third-party plaintiff deposited the $1711.25 surrender value of the policy into the register of the court. *Id.* The Ninth Circuit held that this was an insufficient deposit because the claim against the third-party plaintiff was also for interest and attorney fees.

7–OPINION AND ORDER

*Id.* at 815 ("[T]he insurance company's deposit of the amount of the cash surrender value, without more, was not enough to cover the possible future judgment of the court with respect to the subject matter of the controversy. Included in the subject matter of the controversy was Lee's claim to interest and attorneys' fees.") (internal quotation marks omitted).

The cases Mr. Williams cites do not carve out an exception to this rule. In *Kitzer*, the Eighth Circuit held that a court could establish jurisdiction in interpleader when a third-party plaintiff did not deposit stock certificates with the court. The Eighth Circuit reasoned that stock shares have value, but that the certificates representing them do not, and these certificates need not be deposited with the court. *Kitzer*, 379 F.2d at 652–54. The court remarked that "many situations may exist where it becomes impractical for a stakeholder to deposit the specific res in controversy into the registry of the court." *Id.* at 651. Yet even in *Kitzer*, the third-party plaintiff had posted a $2,000 surety bond in lieu of depositing the stock certificates. *Id.* at 651.Lincoln has posted no such bond. In addition, the parties in *Kitzer* were only disputing the ownership of the shares. *Id.* Here, the Williams plaintiffs have requested the court to direct Lincoln to pay them the surrender value of the policy. Even if the insurance policy itself lacked value similar to a stock certificate, the Williams plaintiffs claimed the surrender value of the policy. This is a discernable amount of money that may be deposited with the Court. Therefore, it is not "impractical for a stakeholder to deposit the specific res in controversy into the registry of the court," and it must be deposited before the Court may exercise jurisdiction in interpleader. *Id.* at 651.

In *Austin*, the third-party plaintiff deposited with the court 23,700 shares out of a block of 95,000 shares of stock with competing ownership claims. *Austin*, 218 F.2d at 739. The shares the third-party plaintiff deposited were the only ones in the plaintiff's possession. The third-party

8–OPINION AND ORDER

plaintiff in that case declared that it would not transfer on its books any of the shares not in its possession. *Austin*, 218 F.2d at 741. The Fifth Circuit reasoned that the plaintiff lacked possessory or proprietary interest in the 71,300 shares not tendered to the court. *Id.* at 744. The court also noted that the interpleader statute provided for more liberality with respect to contested property than to contested money. *Id.* at 744–45. The court held:

> When claims for a sum of money only are involved, payment of the entire sum (or giving of a bond) is a condition precedent to the court's jurisdiction. But when claims for specific property are involved, the statute imposes the condition of depositing only the specific property in plaintiff's possession, and the further condition that such property be of the value of $500 or more.

*Id.* at 745. Lincoln has not deposited any property with the registry of the Court, and this case presents facts different from *Austin*. As the court in *Austin* noted, even when the plaintiff lacks control of all the disputed property, there must still be a deposit of some property valued at or above the $500 jurisdictional threshold. Moreover, the allowance *Austin* makes for a deposit of less than the entire stake does not apply in cases where the stake is money. In the present case, the Williams plaintiffs sought payment of the insurance policy's surrender value, not just a transfer of ownership. The exception to the deposit requirement that *Austin* carves out only applies when the plaintiff lacks total control over the disputed res, and that is not the present case.

The Williams plaintiffs argue that Lincoln should be given leave to cure any jurisdictional defect by making the necessary deposit into the registry of the Court. I agree that Lincoln should have the opportunity to make a deposit. *See CNA Ins. Cos. v. Waters*, 926 F.2d 247, 252, n.6 (3d Cir. 1991) ("The law is clear, however, that [the third-party plaintiff] would be permitted to cure this defect by making an additional deposit with the court registry.")

Lincoln is hereby directed to deposit with the registry of the Court an amount equal to the surrender value of the insurance policy in question. As I explain below, this action will be transferred if Lincoln chooses to cure the jurisdictional defect. Because interpleader is a two-stage action, the deposit must be made with the Clerk of Court in the District of Oregon before transfer. If the deposit is not made within fourteen days of the date of this order, Lincoln's complaint will be dismissed.

### III.   Venue Transfer

Universitas moves that, if its motion for dismissal is not granted, venue be transferred to the Southern District of New York. The Williams plaintiffs contend that Universitas lacks standing to challenge venue. Both parties disagree about which venue is convenient to the parties and witnesses and serves the interest of justice. I first address the threshold question of Universitas's standing and then consider the arguments in support of and in opposition to transferring venue.

#### A.   *Universitas has standing to challenge venue.*

The Williams plaintiffs argue that Universitas lacks standing to challenge venue and, alternatively, that if Univeritas has standing, as a third-party defendant it must meet a higher burden to justify a change in venue than an original defendant. The Williams plaintiffs point to several district court opinions to support this argument, relying most heavily on *Fishman v. John Hancock Life Ins. Co. (U.S.A.)*, 2014 WL 1326989 (D. Mass. Mar. 27, 2014). In an unpublished opinion, the District of Massachusetts noted, "[t]here is a serious question as to whether a third party defendant has standing to seek a transfer, under § 1404, of the underlying complaint against a defendant/third party plaintiff, at least where, as here, the Defendants neither moved to transfer nor joined in [third party defendant]'s motion." *Id.* at *4.

This statement in *Fishman* does not control the issue in the present case for two reasons. First, the court in *Fishman* decided the venue motion on other grounds, and expressly declined to resolve the question it posed. *See Id.* ("Because the motion fails on the merits I need not resolve that question.") Second, *Fishman* did not involve interpleader, but impleader under Federal Rule of Civil Procedure 14. *See Id.* at *1.

The distinction between interpleader and impleader matters. Interpleader involves two stages. In the first stage, the court determines whether the third-party complaint meets the requirements for rule or statutory interpleader. *See Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012). In the second stage, the court determines the rights of each claimant to the interpleaded stake. *Id.* At the transition to the second stage, the third-party plaintiff is discharged from the action. *See Mut. Life Ins. Co. of N.Y. v. Ginsburg*, 125 F.Supp. 920, 925 (W.D. Pa. 1954). The third-party defendants are left as adversaries in the matter.

In impleader, by contrast, a third-party defendant's liability depends on the liability of the original defendant as determined in the original action. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.") To allow a venue transfer motion by a third-party defendant in impleader could subject the plaintiff and defendant in the original action to a venue neither chose. That risk is absent in an action in interpleader because the only litigants to dispute the merits of a claim are the original plaintiff and the third party defendants. If a third-party defendant lacked the capacity to challenge venue in an interpleader case, one of two possible scenarios would result. The first scenario occurs when interpleader is alleged defensively in response to a complaint by the original plaintiff. In this first scenario, the only party with standing to challenge venue is the original plaintiff, a situation incommensurate with

11–OPINION AND ORDER

the right of defendants in other cases to challenge venue. The second scenario occurs when the interpleader complaint is the first filed. In this second scenario, a plaintiff in interpleader could seek dismissal from the action, compelling third-party defendants to litigate in a forum that neither chose while the third-party plaintiff neither bore the burden nor reaped the benefit of his choice of forum. Neither of these scenarios is consistent with the policy of allowing litigants in to challenge (or even choose) venue.

The other cases the Williams plaintiffs cite are similarly inapposite. In *Pelinski v. Goodyear Tire & Rubber Co.*, 499 F.Supp. 1092, 1095 (N.D. Ill. 1980), the court stated that there was a question as to whether a third-party defendant could move to transfer venue, but then considered the transfer motion anyway. The court in *St. Hilaire v. Shapiro*, 407 F.Supp. 1029 (E.D.N.Y. 1976) held that a third-party defendant lacked standing to challenge venue, but its reasoning does not apply here. That case, like the others the Williams plaintiffs cite, involved an impleaded defendant. The court cited Moore's Federal Practice for the statement that "[t]he venue statutes do not, however, deal with . . . third-party claims . . . . And properly so, we believe, for these devices deal with the presentation of claims in an already pending action, and the venue statutes are concerned with the institution of an original action." *St. Hilaire*, 407 F.Supp. at 1031 (citation omitted) (footnote omitted). This principle does not apply in interpleader because the defendants become adversaries when the original claim is discharged. *Seafood Imports Inc. v. A.J. Cunningham Packing Corp.*, 405 F.Supp. 5 (S.D.N.Y. 1975), has a holding similar to *St. Hilaire*, *See Seafood Imps. Inc.*, 405 F.Supp. at 8. But again, this holding pertains to an action in impleader, not an action in interpleader.

In interpleader, the weight of authority favors holding that any defendant can challenge venue. The Western District of Pennsylvania noted in *Mutual Life Ins. Co. v. Ginsburg* that

12–OPINION AND ORDER

"[s]ection 1404(a) by its terms applies to 'any civil action' and it was intended to blanket the field and could appropriately be construed to include a contest between two claimants after interpleader has been granted" in transferring an interpleader action. *Mut. Life Ins. Co.*, 125 F.Supp. at 925; *see also Carolina Cas. Ins. Co. v. Mares*, 826 F.Supp. 149, 153 (E.D. Va. 1993) (denying a motion to transfer venue on other grounds); *Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F.Supp. 2d 481, 496–97 (S.D.N.Y. 2001) (denying a motion to transfer venue on other grounds); *Big Island Yacht Sales, Inc. v. Dowty*, 848 F.Supp. 131, 135 (D. Haw. 1993) (transferring venue under 28 U.S.C. §1406). Universitas may challenge venue here.

### B. *Venue should be transferred to the Southern District of New York.*

A statutory interpleader action may be brought "in the judicial district in which one or more of the claimants reside." 28 U.S.C. §1397. It is undisputed in this case that the Williams plaintiffs reside in the District of Oregon, Universitas resides in the Southern District of New York, and Grist Mill resides in the District of Connecticut. As a preliminary matter, venue is proper in the district of Oregon. The case might also have been brought in the Southern District of New York.

Even when venue is proper in this Court, I have discretion to transfer this action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought . . . ." 28 U.S.C.A. § 1404. As I explain above, this power obtains in interpleader as in any other civil action. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The court is charged with balancing "the preference accorded plaintiff's choice of forum with the burden of

13–OPINION AND ORDER

litigating in an inconvenient forum." *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citations omitted). Notably, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Id.*

The Ninth Circuit identifies eight factors to consider in transferring venue: (1) plaintiff's choice of forum, (2) convenience to the parties, (3) convenience to the witnesses, (4) ease of access to evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Id.* The standard to defeat the plaintiff's chosen forum is high: a defendant must make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or non-existent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks, brackets, and citations omitted).

The factors listed above favor transfer in this case. As I explain below, plaintiff's choice of forum is a consideration inapplicable to the present case. The feasibility of consolidation with another action favors transfer, while other factors either tilt slightly in favor of transfer or are neutral.

### 1.  The Plaintiff's Choice of Forum Is Not Given Deference.

In considering motions to transfer venue in interpleader cases, courts do not defer to the third-party plaintiff's choice of forum as in other civil actions. Deference to the plaintiff's choice of forum in other contexts "gives meaning to plaintiffs' freedom or privilege to select the forum." *Mut. of Omaha Ins. Co. v. Dolby*, 531 F.Supp. 511, 514 (E.D. Pa. 1982). In a true interpleader action, the plaintiff in interpleader has no interest in the merits of any competing claims. Indeed, in the present case, Lincoln expressly asserts its disinterest in the merits of this

action. *See* Def.'s Resp. [28] at 3 ("Lincoln views its role in this dispute as merely waiting for a court to tell it what action it must take regarding the ownership and control of the Policies [sic].") As the Eastern District of Pennsylvania noted, "[f]or this reason, the presumption is inapplicable in an interpleader action if the party or parties that initiated the action are discharged prior to trial." *Dolby*, 531 F.Supp. at 514. The Western District of Pennsylvania came to a similar conclusion, noting that "[t]he weight usually given to a plaintiff's choice of forum is absent here since the [interpleader] plaintiff Insurance Company which brought the interpleader has been discharged as a party and will not participate as such in the trial on the merits." *Mut. Life Ins. Co. of N.Y.*, 125 F.Supp. at 925 (citation omitted). Should Lincoln cure the jurisdictional defect in its complaint by making the requisite deposit with the registry of the Court, it will be discharged from the action before the merits of the claims are considered. *See* Moore's Federal Practice § 22.03[2][a]. ("In a 'true' or 'strict' interpleader case . . . the stakeholder does not claim an interest in the stake, and thus should be dismissed from the case before the second stage proceeds.") For this reason, I do not consider Lincoln's choice of forum in bringing the interpleader action.

Nor do I consider the choice that the Williams plaintiffs made in filing their complaint in this district. The Williams plaintiffs will not be dismissed from the case should Lincoln cure the jurisdictional defect and they surely have an interest in litigating in Oregon where they filed. I cannot defer to that interest, however. Assuming interpleader is perfected by Lincoln's deposit to the court, the Williams plaintiffs will be in an action with parties over whom this Court could not have exercised jurisdiction allowed by Federal Rule of Civil Procedure 4(k)(1)(A). A perspicacious plaintiff who intended to reach a party not subject to personal jurisdiction in his forum of choice could sue a stakeholder subject to personal jurisdiction in that forum of choice.

That perspicacious plaintiff could then rely on the stakeholder to interplead the third-party defendant subject to national service of process pursuant to 28 U.S.C. § 2361. Were the original plaintiff entitled to then invoke the court's deference to his choice of forum, interpleaded defendants would be unfairly constrained in their ability to transfer venue out of forums with which they had no contacts. Such a structure might incentivize suits against stakeholders instead of suits directly against adverse claimants in order to circumvent Federal Rule of Civil Procedure 4(k)(1)(A).

### 2.     Consolidation Favors Transfer to Southern District of New York.

Univeritas argues that this action should be transferred to the Southern District of New York so that it may be consolidated with an interpleader action initiated by the Penn Mutual Life Insurance Company ("Penn Mutual") prior to the filing of the interpleader complaint in this case. Third-party Def.'s Mot. to Dismiss [19] at 5, 16. The Williams plaintiffs respond that this action and others that Universitas foresees cannot be consolidated with the Penn Mutual action because (1) policyholders are not subject to personal jurisdiction in New York and (2) the cases present differing issues of fact and law.

The Williams plaintiffs' first argument is unavailing because a federal court in New York clearly would have personal jurisdiction over all policyholders. The policyholders would be interpleaded under 28 U.S.C. §1335 and are therefore subject to nationwide service of process. 28 U.S.C. § 2361. According to Federal Rule of Civil Procedure 4(k)(1)(C), a federal court located in New York would have jurisdiction over the Williams plaintiffs because that jurisdiction is authorized by statute, specifically 28 U.S.C. § 2361.

The Williams plaintiffs support their second argument by citing to *Universitas Educ., LLC v. Nova Group, Inc.*, 2015 WL 57097 (S.D.N.Y. Jan 5, 2015), which ordered the dismissal

of Mr. Williams from the suit in which Universitas obtained judgment against Grist Mill. The dismissal of Mr. Williams from that action turned on the limits of the court's ancillary jurisdiction over Mr. Williams and others like him in enforcing Universitas's judgment against a party that Universitas alleges fraudulently transferred funds to Grist Mill. *Id.* at * 3. ("Such attenuated proceedings are well beyond the scope of the ancillary jurisdiction that is necessary and appropriate to ensure that the Court can function successfully . . . .") (internal quotation marks omitted). The opinion the Williams plaintiffs cite does not decide whether the legal issues and facts pertaining to Mr. Williams and others like him may be consolidated with each other—it is an opinion about ancillary jurisdiction and not consolidation.

     I find that there is a high probability that the present case will be consolidated with similar actions brought against Universitas. On the record before the court, the cases Universitas seeks to consolidate into one case all involve: (1) an insurance policy held by the Grist Mill Trust and issued by either Lincoln or Penn Mutual; (2) the policy is subject to Universitas's judgment lean against the Grist Mill Trust; and (3) a policyholder who is seeking to have the ownership of an asset owned by the Grist Mill Trust transferred to the policyholder without paying the Grist Mill Trust the cash value of the policy at the time of transfer. The only difference that the Williams plaintiffs point to is that each policyholder likely has a slightly different trust agreement with the Grist Mill Trust. In light of the many significant similarities between the various cases, the minor differences in the trust agreements from year to year are of little concern to me. In the interests of "the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments," the similarities in this case make consolidation highly likely. *See Hawkins v. Gerber Prods. Co.*, 924 F.Supp.2d 1208, 1214 (S.D. Cal. 2013). Therefore, this factor strongly weighs in favor of transfer.

17–OPINION AND ORDER

### 3. Other Venue Transfer Considerations Favor Transfer or are Neutral.

The other considerations in transferring venue to the Southern District of New York are either neutral or tilt in favor of transfer.

#### a) Convenience to the parties

Universitas argues that it has no connections to Oregon and points out that Grist Mill has offices nearer to New York than to Oregon. The Williams plaintiffs respond that Mr. Williams has no connection to New York. In reply, Universitas argues that Mr. Williams filed a complaint seeking a protective order in New York and was previously willing to litigate this matter there. This factor tilts toward transfer.

#### b) Convenience to the witnesses

Universitas does not argue about the convenience of witnesses. The Williams plaintiffs argue that any witnesses that might be called in the action live in Oregon. Yet the Williams plaintiffs assert that they hope that this case will be resolved on summary judgment and not require witness testimony. Because witness testimony is unlikely, this factor only slightly favors Oregon.

#### c) Ease of access to evidence

Universitas makes no argument about ease of access to evidence. Mr. Williams argues that any necessary evidence is located in Oregon. He suggests such evidence might include "the financial records of Mr. Williams, his Corporation, and financial institutions." Pl.'s Resp. [33] at 29. Given the realities of modern technology and the costs of shipping, this factor has less meaning today than it had twenty years ago. Neither party has suggested that the volume or nature of evidence is such that transportation of documents or other evidence would be burdensome. This factor very slightly favors Oregon.

18–OPINION AND ORDER

          **d)**      **Familiarity of each forum with the applicable law**

Universitas makes no argument regarding the Southern District of New York's familiarity with the applicable state law. The Williams plaintiffs contend that the state law issues are standard and that this factor is neutral. I agree.

          **e)**      **Local interest in the controversy**

Universitas makes no argument regarding the local interest in the controversy. The Williams plaintiffs concede that this factor carries little weight in this instance. I agree.

          **f)**      **Relative court congestion**

Universitas does not make an argument about the relative congestion of courts in this District or in the Southern District of New York. The Williams plaintiffs suggest that the Southern District of New York's finding that it lacked ancillary jurisdiction over Mr. Williams's claim indicates that Mr. Williams is more likely to have his case heard in Oregon. This argument is unavailing because the legal issues involving jurisdiction that led to the dismissal of Mr. Williams's first case do not apply to the present interpleader action. This factor is neutral.

//
//
//
//
//
//
//
//
//

## CONCLUSION

Universitas's Motion to Dismiss for Lack of Jurisdiction [19] is GRANTED in part and DENIED in part. For the reasons stated above, Lincoln must deposit the surrender value of the insurance policy in question with the registry of this Court. Should Lincoln fail to do so within fourteen days of the date of this order, its third-party complaint will be dismissed. If Lincoln's complaint survives dismissal because Lincoln cures its jurisdictional defect, this action will be transferred to the Southern District of New York for possible consolidation with similar actions. IT IS SO ORDERED.

DATED this 3rd day of August, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge